### KIGHT v BOREN

Ohio Appeals, 2nd Dist, Franklin Co

No 2752. Decided April 9, 1938

Hugh Huntington and Benson Ogier, Columbus, Attorneys for Plaintiff-Appellant.

Hedges, Hoover & Tingley, Columbus, Attorneys for Defendants-Appellees.

## OPINION

By GEIGER, J.

This is an appeal on questions of law from a judgment of the Court of Common Pleas, Division of Domestic Relations, against the plaintiff-appellant.

The questions presented arose as follows: In October, 1929, plaintiff instituted her action for divorce against William B. Kight, defendant, then her husband. The ground for divorce set forth in the petition was gross neglect of duty. The petition did not specifically pray for alimony, but it sought "such other relief as is equitable and just". The defendant defaulted, and the cause was heard and a decree of divorce granted to the plaintiff.

According to the transcript of docket and journal entries, on December 16, 1935, an entry appears reciting that upon motion of the plaintiff, George R. Hedges, as Administrator with the will annexed of the Estate of William B. Kight, and Rosalie Boren be and are hereby made parties defendant.

Thereafter the plaintiff filed her petition of date December 13, 1935. The petition in substance recites the granting of the divorce as heretofore set forth; that "prior to the filing of said petition for divorce, she was informed by the said William B. Kight, now deceased, that he had, through business reversals, lost all the money which this plaintiff and her then husband had accumulated during their twenty-three years of married life; that he acted in a manner tending to and which did cause her to procure the divorce. That after she had been informed that he had lost all of his money, she continued to support him up until the time the divorce was granted. That during their marriage, defendant had purchased and given to plaintiff bonds in the value of $4000.00 and a diamond ring of the value of $1000.00; that upon demand he refused to surrender them, saying that they had been converted to cash and lost. That defendant had a savings account in the sum of approximately $6000.00, which, without her consent or knowledge, defendant drew and later informed plaintiff that it had been lost. It is further averred that since the death of said William B. Kight, plaintiff has learned that when she secured the divorce from him, he had more than $5000.00 in a checking account, had possession of the diamond ring aforesaid, and large sums of money in other property. That he had this property at the time he induced her to believe he was penniless and prevailed upon her not to seek alimony. It is averred that Kight made the false representations intending that plaintiff rely upon them, and that she did rely upon them to her damage. It is averred that the estate of William B. Kight, deceased, consists of $12,493.71, a farm and other real estate.

The prayer is that the divorce decree may be revoked or vacated and held for naught and that this Court award plaintiff such alimony as she be entitled to in the premises, and that she be permitted to amend her original divorce petition and pray for alimony and for such other and further relief as she may be entitled to either in law or equity.

Therefore the order making George R. Hedges, as administrator with the will annexed of the Estate of William B. Kight, and Rosalie Boren, parties defendant, and the petition of the plaintiff were stricken from the files.

It is from this action of the trial court that the appeal is prosecuted. The briefs of counsel are comprehensive and discuss all the questions presented.

It is our judgment that the case may be determined upon broad general principles without discussion of the more limited questions raised by reason of procedural steps in this case.

At the time that the plaintiff instituted her action for divorce the husband was duly served with summons in the divorce action. She did not ask alimony. No doubt the Court could have, independent of a specific prayer, awarded her alimony. However, no such step was taken nor requested. The new petition explains that the plaintiff's failure to pray for alimony was caused by the false representation of defendant as to his financial worth. He is now dead.

The entire Court concurs in finding:

"The facts set out in the petition appeal to the Court and if proven and it were within our power to secure the plaintiff any legal relief we would be satisfied that it was well merited."

The majority believes that we may be able to demonstrate that a woman who has set up facts which, if proven, ██ would indicate that she has been deprived of her rights, through the fraud and machination of her husband, has an available remedy.

According to the petition, the wife refrained from asking for alimony because of the deception of her husband and not because she waived alimony. Upon discovery of the deception, after his death she asked that the Court award her that which was of right due her but not asked for by reason of her ignorance of the real facts, caused by the deceit of the husband practiced on her for the very purpose of causing her to refrain from seeking that which was justly hers in the original divorce action.

Probably the divorce can not be set aside, even though it may have been obtained by fraudulent representation made by the husband at the time of the hearing, but it does not follow that the wife may not, by proper proceedings, have the question of her rights in the husband's property as they existed at the time of the divorce, considered and adjudicated.

The most difficult case to surmount and that on which the dissenting member of the Court relies, is that of **Weidman v Weidman, 57 Oh St 101.** The syllabus of this case is:

"Where a wife obtains a divorce from her husband in this state without a decree of alimony, he being personally served with process, she cannot thereafter maintain a separate action against him for alimony."

In analyzing this case we must keep in mind the well recognized rule that while the law of the case is stated in the syllabus, the Supreme Court has also frequently announced the rule that even the syllabus of the case must be read and construed in the light of the questions in issue. We think this rule applicable in the consideration of the instant case.

We have no doubt as to the correctness of the decision in the cited case and its compelling authority where the issues are the same as those there considered, but believe we should briefly analyze the case to determine whether the questions at issue are similar to those here. In that case the plaintiff was divorced from her husband in 1879. The defendant promised the plaintiff if she refrained from disclosing certain facts he would pay her money from time to time and relying upon that promise she applied for and obtained a divorce without any decree for alimony and thereafter, in the action then under consideration, filed her petition for alimony, setting out that her former husband had failed to perform his promise and that he was worth a large sum of money and that she was necessitous. The defendant demurred, which demurrer was sustained, and that action sustained in the reviewing courts. In analyzing the facts the Court stated that at the time of the divorce both parties were residents of the same county and personal service had been had; that the divorce was absolute and that the Court had full jurisdiction of the parties and of the subject matter. The Court points out that in this respect the case differs from the cases cited, in which the proceedings were ex parte, without personal service and states that in cases in which there is no jurisdiction of the person of one of the parties there can be no adjudication in personam of the question of alimony and that while the divorce may be valid, the question of alimony remains unadjudicated, "and the

wife may, under proper circumstances, maintain an action for alimony."

The Court also states that in actions for divorce in which the court has jurisdiction of both parties, the final decree of divorce would include all questions of alimony and the wife can not thereafter maintain a separate action against her late husband for such alimony; that after absolute divorce in the action where the Court had jurisdiction of both parties, the wife is no longer the wife and the Court states that strictly speaking the same is true in cases in which divorce is obtained by the husband in an exparte proceeding, but says that:

"As the wife in such cases has not had her day in court as to alimony, nor as to her equitable interest in his property, this court, by a liberal construction in her favor, has allowed her in such cases to maintain a separate action against her divorced husband for the recovery of alimony, which is in its nature an equitable allowance out of his property."

It is stated that the principle can not be extended so as to allow a woman who has been divorced in an action in which the Court had jurisdiction of her person to waive alimony in the divorce proceedings and then years afterwards maintain a separate action. Her equitable interest in such property is so connected and interwoven with the marriage relation that it can be best ascertained and separated in the same action in which the marriage contract is severed by divorce.

"And when both parties have their day in court in the divorce proceedings, and permit the marriage contract to be severed, without at the same time having their property rights growing out of such contract and relation, adjusted, it will be held that they have conclusively waived and withdrawn the consideration of that question from the court, and neither of them can thereafter be heard in aid of an adjudication as to such property, or as to such property rights. In such cases the courts will leave the parties where they have placed themselves."

While the wife in this case was induced to refrain from asking for alimony under certain promises made by the husband as to his future action, in the instant case the wife was induced to refrain from asking alimony by the deception practiced upon her by her husband, whereby she was lead to believe that he had no property and that therefore it would be useless to ask for alimony. She did not waive alimony in the divorce proceedings and she did not permit the marriage contract to be severed without having her rights growing out of the relation adjusted. She refrained from having her rights adjusted because she was deceived by her husband into believing that she had no property rights because there was no property in which she could have rights.

In the case above cited, the husband did not deceive the wife as to his present property, but persuaded her to refrain from asking for alimony by making promises as to what he would do in the future. A promise of future action is far different from a false representation as to present facts. In the instant case the wife "has not had her day in court as to the alimony, nor as to her equitable interest in her husband's property." Where there was no personal service the court has, by a liberal construction in her favor, allowed her to maintain a separate action for the recovery of alimony. We are convinced that the same "liberal construction in her favor" should protect the wife who has been deceived by false representation as well as the wife who could not have her alimony allowed because she had not obtained personal service.

We are conscious of the fact that unless the same principle be applied to a wife who has been purposely deceived by her husband as has been heretofore applied to the wife who has not secured personal service, her cause must fail, under the authority of the above case.

It might be of some value to examine briefly other decisions. In Woods v Waddle, 44 Oh St 449, it is held that a wife who had not obtained personal service had a right to bring her action for alimony alone and have her claim determined, and that the court, under proper facts, could allow reasonable alimony. The court points out that the woman's rights to alimony had not been passed upon by any court and that under the facts her action for alimony, brought long after the divorce, was the first in which she could recover alimony, and that for the purposes of the statute, while she was divorced she could still be regarded as "a wife", the Court citing the case of Cox v Cox, 19 Oh St 502, where Judge White held that the term "wife" may be regarded to designate the person and not the actual existing relation or that

she may still be regarded as holding the relation of wife for the purpose of enforcing her claim for alimony, and that the decree of divorce was no defense to her petition for alimony. The Court held that the allowance of alimony was not error.

A pertinent part of this decision is that the petitioner may still be regarded as holding the relation of wife for the purpose of enforcing her claim for alimony. In the case at bar she asserted no claim for alimony because by the deception of her husband she did not know she had any such claim.

In the case of **Bay v Bay, 85 Oh St 417,** it is held that where the husband by fraud obtains a decree of divorce for his wife's aggression, and that the decree, by reason of the wife's aggression, so found, bars her of alimony, the decree dissolving the marriage relation is conclusive, but when the court making such decree did not have jurisdiction of the wife's person, she may thereafter have the decree and the issues opened up, so far as they relate to her interests in the husband's property and be let in to defend. It is true that this case discloses the fact that the husband, in obtaining a divorce from his wife, did not obtain personal service upon her and in that respect the case is similar to other cases holding that where no personal service is had the question of alimony may be adjudicated after the divorce. But there is much said in that case that we think pertinent. Her petition was not filed until after the death of her husband and in that it is similar to the case at bar. The court points out that the relief sought was not for the purpose of defending against the divorce, as the marriage relation had already been dissolved by death but what the wife complains of is that she had not had her day in court to be heard upon the adjustment of property rights as between herself and her husband. The Court cites **Parish v Parish, 9 Oh St 534,** and states that:

"We see nothing in the judgment or the reasoning in that case which would justify its extension to this phase of the present case."

And further says:

"We think that it would be doing violence to the language of the Court to hold that sound public policy would protect the fruits of fraud and perjury beyond the mere severance of the marriage relation."

The Court points out that the examination of cases will disclose that the Supreme Court has always distinguished the reviewable nature of a judgment in a divorce proceeding respecting property interests from the finality of the divorce and in certain cases in furtherance of justice has declared that "the wife may maintain an action for alimony as "wife", although by reason of previous dissolution of a decree the matrimonial relation no longer exists." Citing a number of cases so holding.

In speaking of the divorce granted, in **Doerr v Forsythe, Admr., 50 Oh St 726,** it is pointed out that the Court there held that the divorce did not affect the property rights of the wife and all that can be claimed ed is that it dissolved the marriage relation. The Court further analyzes other cases and points out that the interests of the wife in the husband's property have been considered in cases in which both parties to the divorce proceedings were dead. This, of course, brings us back to the difference that in that case there was no personal service, but the Court holds that inasmuch as she alleged that she had neither notice nor knowledge of the pendency of the petition for divorce until after the death of her husband, "she has a right to be heard upon all questions arising upon this alleged fraudulent judgment as to her rights in the property of Christian Bay."

The case at bar is similar in that the plaintiff herein had neither notice nor knowledge of her rights until after the death of her husband. In one case she did not have notice or knowledge of the pendency of the petition and in the instant case she did not have notice or knowledge of the property owned by her husband, even though she did have notice of the pendency of the petition, she being the plaintiff.

In the case of **Coffman, Admr., v Finney, 65 Oh St 61,** it is held that where a decree of divorce has been pronounced in favor of the wife for the aggression of the husband, the right to alimony out of his estate becomes vested by force of the statute, and that in such case, during the pendency of an appeal, where both parties die, the cause survives in favor of her personal representatives. In that case the contention of the plaintiff was that the suit, being one for alimony, was strictly personal and upon the death of both plaintiff and defendant the suit abated and could not be reviewed. It is true that before the death of the husband the divorce had been granted, which left the plaintiff with an award of alimony in gross, which was in legal effect a judgment. It differs from

94

the case at bar in that the wife asked the allowance of alimony.

We are convinced that justice requires that the rights of the wife, of which she was deprived by the false representations of her husband, are not foreclosed, either by the fact that both were before the Court or by the fact that the husband has since died, where the right of the wife to alimony has never been considered by any Court, due not to her fault but to the deception practiced by her husband.

## DOES SUCH RIGHT SURVIVE HIS DEATH?

We think the cases that have been cited and referred to clearly demonstrate the fact that the intervening death of the husband or even of both parties does not deprive the Court of jurisdiction to consider the wife's interest in the husband's property at the time of the divorce. It is claimed that a court now passing upon the question could not justly fix the interest, of the wife, due to the death of the husband, but that is merely a factual matter, to be controlled by the evidence.

There are two sections of the statute which might be considered. §11235, GC, provides for those causes of action which shall survive, among them "for deceit or fraud." Actions may be brought on these causes of action, notwithstanding the death of the person entitled or liable thereto. It is possibly correct that the present cause of action is based upon the right of alimony and not upon the alleged deceit of fraud. If it is based upon deceit or fraud it is specifically covered by the statute, but we do not rely on this construction of deceit or fraud.

Sec 11397, GC, provides that unless otherwise provided no action or proceeding pending in any court shall abate. A cause of action for alimony is not mentioned. Of course, a cause of action for divorce alone, abates by the death of either party. The action for alimony involving property, falls within the provision of one or the other or rather of both of these two sections. If it is a cause of action not ripened into a pending proceeding, it survives under §11235, GC. If an action or proceeding is pending, involving alimony it does not abate under the provisions of §11397, GC.

That §11397, GC, controls pending causes of action for alimony is made clear in the case of Coffman, Admr., v Finney, 65 Oh St 61, where the Court says at page 68:

"But if there be doubt of the proper answer to the contention of plaintiffs in er-

ror when reviewed from the standpoint of principle, it seems quite clear that all doubt vanishes when we give effect to our statute, §5144." (11397, GC.)

In the case of Chilcote, Gdn., v Hoffman, et al., 97 Oh St 98, these and the inter-related statutes are considered by Judge Donahue, who says at page 102, in speaking of the effect of §11402, GC, having to do with revivor of actions and whether or not a cause of action survived, says:

"There is no construction that will give such intelligent purpose to this statute other than the construction that the cause of action does survive in all cases where a pending action does not abate by the death of either party."

This supports the view that if an **action** or **proceeding** involving alimony does not abate upon the death of the party as held in Coffman, Admr., v Finney, then, under §11235, GC, as interpreted in Chilcote, Gdn., v Hoffman, a **cause of action** involving alimony survives the death of the party.

Whether the plaintiff's right to alimony in the instant case is involved in a **pending action** or is simply a **cause of action**, in either event it survives the death of the husband. See Porter, Exr. v Lerch, 129 Oh St 47.

We believe the way is open to afford to the plaintiff in this case a remedy for the wrong which she has suffered, in spite of the fact that in the divorce action both parties were before the Court and in spite of the fact that her husband has since deceased.

## DOES FRAUD VITIATE THE ACTION OF THE COURT IN THE ORIGINAL PROCEEDING?

The courts have always been quick to give relief where a wrongful result was obtained by fraud.

"Judgment rendered in proceeding which has for its basis fraudulent foundation is void, since fraud vitiates and makes void everything it touches."

Dahms v Swinburne, 31 Oh Ap 512, Paragraph 1 of the syllabus.

Also, in the same case:

"It is axiomatic that fraud vitiates and makes void everything it touches. This includes a judgment rendered in a proceeding which has for its basis a fraudulent foundation."

There is a long line of cases in the var-

ious states, and others in this state where decrees have been set aside for fraud, where they were obtained by the party committing the fraud. We quote the following from **19 O.J., page 330, §16:**

"The genius of the law opposes itself to all fraud, and the most solemn judicial proceedings, when tinctured with it, are vitiated. Fraud taints every transaction into which it enters, and vitiates contracts which but for it would not have been entered into. There is no exception to this rule."

The finality of divorce actions before the adoption of the Constitution of 1912 as held in **Parish v Parish, 9 Oh St 534,** and other kindred cases has been modified since the adoption of the new Constitution so that that which was a finality under the old interpretation may now be reviewed in the Court of Appeals. See **Weeden v Weeden, 116 Oh St 524; Campbell v Campbell, 128 Oh St 590.** In the case at bar the husband having died there is no occasion or opportunity to review the judgment of the Court below in granting the divorce but this is not true as to the right of the wife to alimony in the property of the husband.

We would suggest that if this case is further pursued in the court below that some further attention be paid to the form of the petition and the prayer thereof.

Judgment of the court below reversed. Cause remanded for further proceeding. BARNES, PJ, concurring; HORNBECK, J, dissenting.

HORNBECK, J, dissenting.

Many cases outside of Ohio · are cited, which hold that the court has the right long after term, upon showing of fraud inducing a decree of divorce, to set aside that decree as being void and of no effect.

If we should so hold in this case it would not reach the ultimate question presented. It is necessary, to meet the prayer of plaintiff's petition, that the trial judge go one step further, namely, make an award of alimony. The petition prays that the decree of divorce be vacated but does not aver that it was induced by fraud.

An award of alimony to the wife can only be made against living husband. If the court has jurisdiction of the person against whom the relief is sought and he is alive, the award may be made at the time of the decree, either as alimony alone or alimony in conjunction with the divorce. It would not be urged that an original action could now be instituted for alimony

because there is no proper party to respond as a defendant. It is not claimed that the facts upon which the right to assert alimony are grounded, were known during the lifetime of William B. Kight. It thus follows that at no time while he was living could alimony have been asserted against him.

All of the cases cited by plaintiff are those wherein the court merely recognized the void or voidable character of the divorce decree. The decree being void and so adjudged, certain beneficial results attended, among which was the right of the plaintiffs to property of their deceased spouses, which at all times subsisted.

Here there is no claim of a void decree and it is necessary that an affirmative finding and order now be made by a court before the plaintiff is entitled to alimony. Such an order can only be made when and if the parties are in the relation of husband and wife. If, during the lifetime of the husband, the divorce decree had been declared void, then a court could have permitted an amendment to the petition and a prayer for alimony, and upon proper showing, could have ordered such alimony; but when the husband died the right to make any award of alimony ceased.

We do not deem it necessary to take up and discuss all of the cases cited for the reason that none of them, in our opinion, is in conflict with the legal principle which we have followed. No case is found where alimony as such has been awarded after a party to the marital relation is dead. This fact, while not conclusive of the question before us, is certainly persuasive.

A typical case cited by appellants, presenting one of the best considerd opinions, is that of Dennis v Harris, Admx., et al., 179 Ia., 121. The wife there secured a divorce for the aggression of her husband and was awarded $15,300.00 permanent alimony. Many years thereafter and after the husband's death, she instituted her action, averring that the whole proceeding of divorce was the result of duress practiced upon her by her husband. She prayed that the decree of divorce be set aside and that she be adjudged entitled to the same portion of the estate of the deceased as she would have been entitled to were she his widow, (the amount of alimony received to be taken into consideration), and, if this relief should not be awarded, that such additional amount as should be deemed equitable be allowed to her as alimony. The court set aside the decree,

but thereafter did not grant the alternative relief sought, namely, further allowance of alimony. The court found that the plaintiff was the instrument of her husband's will in obtaining the decree. It should be noted, as we have before observed, that when the decree of divorce was set aside the plaintiff became the widow of her deceased husband, and by force of that relationship she was entitled to the share of his estate less the alimony which she had already received.

In **Weidman v Weidman, 57 Oh St 101,** the plaintiff, a divorced woman, averred that she was induced by her husband to refrain from charging him with adultery in a divorce proceeding and from disclosing certain other disgraceful facts concerning him of which she had knowledge, by the promise to pay her money from time to time amply sufficient to support her and her daughters; that she instituted her action for divorce on the ground of extreme cruelty, and was given the custody of her minor children; that being young and inexperienced she relied upon her husband's promise, applied for and obtained the divorce without any decree for alimony. The husband failed to observe his promise to pay her money for her support and the support of her children. She sought to maintain a separate action for alimony. The court held that,

"Where a wife obtains a divorce from her husband in this state without a decree for alimony, he being personally served with process, she can not thereafter maintain a separate action against him for alimony."

At page 103 the court says in the opinion:

"The action for alimony is statutory, and by § 5702, GC, Revised Statutes, it is provided that, 'a wife may file her petition for alimony alone.' After an absolute divorce in an action in which the court had jurisdiction of both parties, she is no longer 'the wife', and does not come within the provisions of the statute. Strictly speaking the same is true in cases in which the divorce was obtained by the husband in an ex parte proceeding but as the wife in such cases has not had her day in court as to alimony, nor as to her equitable interest in his property, this court, by a liberal construction in her favor, has allowed her in such cases to maintain a separate action against her divorced husband for the recovery of alimony, which is in its nature an equitable allowance out of his property. But the principle can not be

extended so as to allow a woman who has been divorced in an action in which the court had jurisdiction of her person, to waive alimony in the divorce proceedings, and then years afterward maintain a separate action therefor."

In the Weidman case the husband was living when the action was instituted and is clearly determinative of the question here presented if the averments of the petition of Caroline Weidman as to the representations of her husband can be classified as fraudulent representations. They seem to charge legal fraud. The Weidman case has been approved many times by Ohio courts and several times in recent years specifically by this court. The only distinction that can properly be made between the instant case and the Weidman case is that here it may be claimed that it is not sought to maintain a separate action for alimony or an action for alimony subsequent to the divorce decree, but as though the action for alimony was being considered as of the date of the original decree. There are so many obvious difficulties in the way of such an interpretation that it is not practicable to so consider it.

If we could hold that the plaintiff was entitled to relief as prayed, it would indeed be doubtful if the trial judge would award to the plaintiff a sum of money in alimony representative of the value of the $4000.00 value of the bonds and $1000.00 value of the diamond ring which plaintiff claims was her property and had been converted by the defendant to his own use. If this were her property and he converted it to his own use, it may be she would have a claim against his estate for the value of the property thus converted. However, this does not avoid the question of the right of plaintiff to have an award of alimony at this time under the averments of her petition.

I do not believe the position of the majority that because alimony is not mentioned in §11397, GC, such a cause of action does not abate by the death of either party. Neither is divorce mentioned but it would not be contended that the right to divorce survives the death of either party.

Whether or not the plaintiff might have some form of equitable action against the estate of her former husband, query? Alimony is a statutory proceeding and contemplates an award from one living spouse to another and the cause of action does not survive the death of either spouse.

The judgment of the trial court should be affirmed.